Filed 8/26/25  P. v. DeJesus CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JUDE CRISOSTOMO DeJESUS,<br><br>    Defendant and Appellant. | B336375<br><br>(Los Angeles County Super. Ct. No. XWESA009892) |

APPEAL from an order of the Superior Court of Los Angeles County, Joseph J. Burghardt, Judge.  Affirmed.

William L. Heyman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill, Supervising Deputy

Attorney General, Nima Razfar, Deputy Attorney General, for Plaintiff and Respondent.

_____

Jude Crisostomo DeJesus appeals from a postjudgment order denying his motion for a proceeding under *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*).[1] The superior court found DeJesus was ineligible for a youth offender parole hearing under Penal Code section 3051[2] because he was sentenced to life without the possibility of parole (LWOP) for his conviction of special circumstance first degree murder. DeJesus was 25 years old when he committed the offense.

On appeal, DeJesus contends section 3051 violates his federal and state constitutional rights to equal protection because young adult offenders serving LWOP sentences for crimes they committed between the ages of 18 and 25 are ineligible for youth offender parole hearings but young adult offenders serving non-LWOP sentences and juvenile offenders who committed crimes before the age of 18 serving LWOP sentences are eligible. DeJesus also argues his LWOP sentence constituted cruel or unusual punishment in violation of the California Constitution. (Cal. Const., art. I, § 17.) We affirm.

_____

[1] In *Franklin, supra*, 63 Cal.4th at pages 283 to 284, the Supreme Court held juvenile offenders who are eligible for a youth offender parole hearing pursuant to Penal Code section 3051 are entitled to a hearing to develop and preserve evidence of their youth-related characteristics and the circumstances at the time of the offense.

[2] Further undesignated statutory references are to the Penal Code.

## FACTUAL AND PROCEDURAL BACKGROUND

A.  *DeJesus's Conviction, Sentencing, and First Appeal*

In February 1992 DeJesus went to the home of Ian Shayne Duncan, an illegal weapons dealer, to ask Duncan if he had any work for DeJesus.[3]  Duncan offered DeJesus $500 to kill Justin Zeitsoff, whom Duncan described to another friend as "some punk" who had "ripped him off."  DeJesus agreed.  Duncan then arranged to have Zeitsoff come to Duncan's home that evening.

On the evening of February 19, 1992, Duncan, DeJesus, and Corey Lohr, a friend of Duncan's, were in Duncan's home when Zeitsoff arrived around 9:30 p.m.  About a minute after Zeitsoff entered the house, Lohr, who was hiding in the bathroom, heard approximately six gunshots.  Lohr came out of the bathroom and found Zeitsoff's body slouched against a wall in the backyard.  Lohr and Duncan moved the body from the backyard to the trunk of Zeitsoff's car.  DeJesus then drove the car, with Zeitsoff's body in the trunk, to another location.

Later that evening, Duncan and DeJesus told Lohr that DeJesus shot Zeitsoff once, Zeitsoff fell down, and Duncan and DeJesus thought Zeitsoff was dead.  Zeitsoff then got up and ran to the backyard where he tried to climb a wall.  Duncan pulled him down, and DeJesus shot him again.

The jury found Duncan and DeJesus guilty of first degree murder (§ 187, subd. (a)).  The jury found true as to both defendants the special circumstance allegations the murder was intentional and carried out for financial gain (§ 190.2,

---

[3]     We summarize the trial evidence recounted in our prior opinion, *People v. DeJesus* (1995) 38 Cal.App.4th 1.

3

subd. (a)(1)), and was committed while lying in wait (*id.*, subd. (a)(15)).  As to DeJesus, the jury found true the allegation he personally used a firearm in the commission of the murder (§ 12022.5, subd. (a)).  The trial court sentenced DeJesus to LWOP.  We affirmed the judgment but remanded for the trial court to determine the appropriate presentence credits to be awarded to Duncan.  (*People v. DeJesus, supra*, 38 Cal.App.4th at pp. 33-34.)

B.     *DeJesus's Motion for a* Franklin *Proceeding*

On October 2, 2023 DeJesus, representing himself, moved for a *Franklin* proceeding to make a record of mitigating evidence related to his youth.  (See *In re Cook* (2019) 7 Cal.5th 439, 451 ["an offender entitled to a hearing under sections 3051 and 4801 may seek the remedy of a *Franklin* proceeding even though the offender's sentence is otherwise final"]; *Franklin, supra*, 63 Cal.4th at pp. 283-284.)  DeJesus asserted he had been convicted of first degree murder; he was 25 years old at the time of the crimes; and he was sentenced to LWOP.  DeJesus argued the exclusion from eligibility for youth offender parole hearings for 18- to 25-year-old young adult offenders who had been sentenced to LWOP violated his federal and state constitutional rights to equal protection (U.S. Const., 14th Amend.; Cal. Const., art. I, § 7, subd. (a)) and the state Constitution's ban on cruel or unusual punishment (Cal. Const., art. I, § 17).

On November 28, 2023 the superior court denied DeJesus's request for a *Franklin* proceeding.  The court explained in a written order that, because DeJesus was 25 years old at the time of the offense, "pursuant to Penal Code 3051(h), he is not eligible for a Youth Offender Parole Hearing."

DeJesus timely appealed.

4

## DISCUSSION

A. *Section 3051 Does Not Violate DeJesus's Constitutional Right to Equal Protection*

"Section 3051 provides that, at a time designated in the statute, the Board of Parole Hearings must hold a parole hearing 'for the purpose of reviewing the parole suitability of any prisoner who was 25 years of age or younger . . . at the time of the controlling offense.' (§ 3051, subds. (a)(1) & (d).) How much time must pass before an eligible youth offender receives a parole hearing depends on the length of the original sentence for the "'[c]ontrolling offense,'" a term defined to mean 'the offense or enhancement for which any sentencing court imposed the longest term of imprisonment.' (*Id.,* subd. (a)(2)(B).) An offender sentenced to a determinate term becomes eligible for parole after 15 years (*id.*, subd. (b)(1)); an offender sentenced to an indeterminate life term of fewer than 25 years to life becomes eligible after 20 years (*id.*, subd. (b)(2)); and an offender sentenced to an indeterminate life term of 25 years to life, or an offender sentenced to life without parole for a crime committed before the age of 18, becomes eligible after 25 years (*id.*, subd. (b)(3), (4))." (*People v. Hardin* (2024) 15 Cal.5th 834, 842-843 (*Hardin*).)

"Certain persons are, however, categorically ineligible for youth offender parole hearings, including offenders sentenced for multiple violent or serious felonies under the 'Three Strikes' law (Pen. Code, §§ 667, subds. (b)-(i), 1170.12); offenders sentenced for sex offenses under the One Strike law (*id.*, § 667.61); and offenders who, 'subsequent to attaining 26 years of age, commit[] an additional crime for which malice aforethought is a necessary element of the crime or for which the individual is sentenced to

5

life in prison.' (§ 3051, subd. (h).) The statute also excludes those who . . . are sentenced to life without parole for a controlling offense committed after reaching the age of 18. (*Ibid*.)" (*Hardin, supra*, 15 Cal.5th at p. 843.)

DeJesus contends section 3051's exclusion of young adult offenders with LWOP sentences from eligibility for a youth offender parole hearing violated his federal and state constitutional rights to equal protection. The Supreme Court recently rejected this argument in *Hardin, supra*, 15 Cal.5th at page 864.

In *Hardin*, Tony Hardin was sentenced to LWOP following his conviction of first degree murder with a special circumstance finding for an offense he committed when he was 25 years old. (*Hardin, supra*, 15 Cal.5th at p. 840.) Hardin asserted section 3051 violated his right to equal protection because "once the Legislature decided to expand [youth offender parole] opportunities to young adults, it could not rationally treat those sentenced to life without parole differently from those convicted of other serious crimes and serving lengthy parole-eligible sentences." (*Hardin*, at p. 846.) The Supreme Court clarified the standard for review of an equal protection claim, explaining, "[W]hen plaintiffs challenge laws drawing distinctions between identifiable groups or classes of persons, on the basis that the distinctions drawn are inconsistent with equal protection, courts no longer need to ask at the threshold whether the two groups are similarly situated for purposes of the law in question. The only pertinent inquiry is whether the challenged difference in treatment is adequately justified under the applicable standard of review. The burden is on the party challenging the law to show that it is not." (*Id*. at pp. 850-851.)

Under rational basis review, applicable here, a court "presume[s] that a given statutory classification is valid 'until the challenger shows that no rational basis for the unequal treatment is reasonably conceivable.' [Citation.] The underlying rationale for a statutory classification need not have been 'ever actually articulated' by lawmakers, nor 'be empirically substantiated.'" (*Hardin*, *supra*, 15 Cal.5th at p. 852.) The Supreme Court in *Hardin* reviewed section 3051's legislative history and observed that "in designing section 3051, the Legislature consciously drew lines that altered the parole component of offenders' sentences based not only on the age of the offender (and thus the offender's amenability to rehabilitation) but also on the offense and sentence imposed. The lines the Legislature drew necessarily reflect a set of legislative judgments about the nature of punishment that is appropriate for the crime." (*Hardin*, at p. 855.) The court acknowledged that it "may be true," as Hardin had argued, that the crime-based categories that affect at what age an offender is eligible for relief may not be rationally related to the purpose of expanding opportunities for early release based on the attributes of youth. (*Ibid*.) But, the court continued, the Legislature was aware of this point, and "nonetheless crafted a statutory scheme that assigns significance to the nature of underlying offenses and accompanying sentences." (*Ibid*.) Therefore, "[t]he statutory framework indicates that the Legislature aimed to increase opportunities for meaningful release for young adult offenders, while taking into account the appropriate punishment for the underlying crimes, depending on their severity." (*Ibid*.)

The Supreme Court held Hardin could not establish that "the Legislature's decision to exclude offenders convicted of

special circumstance murder from the youth offender parole system is 'so devoid of even minimal rationality that it is unconstitutional as a matter of equal protection.'" (*Hardin, supra*, 15 Cal.5th at p. 859.) The court explained that section 190.2 adequately separates out the most egregious murders (i.e., special circumstance murders), which are subject to the most severe punishment—death or LWOP—from other murders (*Hardin,* at p. 859), and therefore, "it is difficult to see how the Legislature that enacted section 3051 could have acted irrationally in singling out special circumstance murder as a particularly culpable offense." (*Id.* at p. 860.) Accordingly, Hardin failed to show "that the exclusion of offenders who are serving sentences of life in prison without the possibility of parole for a crime committed after the age of 18 from youth offender parole eligibility is irrational." (*Id.* at p. 864.)

DeJesus acknowledges *Hardin* likely precludes his equal protection argument regarding the distinction between young adult offenders sentenced to LWOP and young adult offenders convicted of murder who received non-LWOP sentences. But DeJesus contends *Hardin* does not preclude his equal protection argument that there is no rational basis to distinguish between young adult offenders and juvenile offenders sentenced to LWOP. DeJesus is correct that the Supreme Court in *Hardin* did not consider this equal protection challenge, but the court observed that the Court of Appeal (this court) held it was unnecessary to address this argument because "the Legislature acted reasonably in distinguishing between offenses committed before and after the age of 18 because the Eighth Amendment (and the law more generally) makes the same distinction." (*Hardin, supra,* 15 Cal.5th at p. 846.)

DeJesus fails to show that the Legislature acted irrationally in granting youth offender parole hearings to juvenile offenders with LWOP sentences but denying such hearings to young adult offenders with LWOP sentences. As explained by the Court of Appeal in *People v. Sands* (2021) 70 Cal.App.5th 193, 204, in rejecting a similar equal protection challenge to section 3051, "The Legislature had a rational basis to distinguish between offenders with the same sentence (life without parole) based on their age. For juvenile offenders, such a sentence may violate the Eighth Amendment. [Citations.] But the same sentence does not violate the Eighth Amendment when imposed on an adult, even an adult under the age of 26." The *Sands* court reasoned "the Legislature could rationally decide to remedy unconstitutional sentences but go no further." (*Sands*, at p. 204; accord, *In re Murray* (2021) 68 Cal.App.5th 456, 463-464 [rejecting equal protection challenge to section 3051 based on the different treatment of juvenile and young adult offenders sentenced to LWOP because "the United States and California Supreme Courts have found the line drawn between juveniles and nonjuveniles to be a rational one"]; *People v. Morales* (2021) 67 Cal.App.5th 326, 347 ["for purposes of LWOP offenders, the line drawn at 18 is a rational one"]; *People v. Acosta* (2021) 60 Cal.App.5th 769, 779 ["there is a rational basis for distinguishing between juvenile LWOP offenders and young adult LWOP offenders: their age"].)

B.    *Section 3051 Does Not Violate the State Constitutional Prohibition Against Cruel or Unusual Punishment*

DeJesus contends his LWOP sentence constituted cruel or unusual punishment under article 1, section 17 of the California Constitution. He acknowledges that his sentence did not

9

constitute cruel or unusual punishment when it was imposed in 1993. Instead, he argues that sections 3051 and 4801 rendered his LWOP sentence constitutionally excessive because the Legislature, in enacting the sections, acknowledged that youthful offenders who commit serious or violent offenses before they turn 26 years old are less culpable than older offenders, but it denied youth offender parole hearings for young adult offenders sentenced to LWOP. DeJesus has failed to meet his burden to show his LWOP sentence constituted constitutionally excessive punishment.

In *In re Palmer* (2021) 10 Cal.5th 959, 971-972, the Supreme Court held with respect to excessive punishment claims under the California Constitution that "the court's inquiry properly focuses on whether the punishment is 'grossly disproportionate' to the offense and the offender or, stated another way, whether the punishment is so excessive that it "'shocks the conscience and offends fundamental notions of human dignity.'"" (Accord, *In re Butler* (2018) 4 Cal.5th 728, 746 ["A sentence violates the prohibition against unconstitutionally disproportionate sentences only if it is so disproportionate that it 'shocks the conscience.'"].) *Palmer* articulated "three analytical techniques to aid our deferential review of excessiveness claims: (1) an examination of the nature of the offense and the offender, with particular attention to the degree of danger both pose to society; (2) a comparison of the punishment with the punishment California imposes for more serious offenses; and (3) a comparison of the punishment with that prescribed in other jurisdictions for the same offense." (*Palmer*, at p. 973.) The Supreme Court added, "A claim of excessive punishment must overcome a 'considerable burden' [citation], and courts should

10

give "'the broadest discretion possible'" [citation] to the legislative judgment respecting appropriate punishment." (*Id*. at p. 972.)

With respect to juvenile offenders, in *Miller v. Alabama* (2012) 567 U.S. 460, 479, the United States Supreme Court held that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders" (who committed their crime before they turned 18 years old). The court's decision in *Miller* followed its decision in *Roper v. Simmons* (2005) 543 U.S. 551, 574 (*Roper*), which held the Eighth Amendment prohibited the imposition of the death penalty for juvenile offenders. In *People v. Caballero* (2012) 55 Cal.4th 262, 268, the California Supreme Court held, in the context of a 110-years-to-life sentence imposed on a juvenile for nonhomicide offenses, that parole-eligible sentences for juvenile offenders violate the Eighth Amendment if the parole eligibility date falls beyond the offender's natural life expectancy.

The California Supreme Court in *People v. Flores* (2020) 9 Cal.5th 371, 429, considered whether the Eighth Amendment's prohibition on the death penalty for juvenile offenders under *Roper* should apply to youthful offenders who committed crimes between the ages of 18 and 21. The court rejected the defendant's argument that the Legislature's enactment of section 3051, subdivision (a)(1), providing youth offender parole hearings to most youthful offenders who were 25 years old or younger at the time of their commitment offense, supported a "categorical bar on the death penalty for individuals between the ages of 18 and 21 at the time of their offenses." (*Flores*, at p. 459; accord, *People v. Tran* (2022) 13 Cal.5th 1169, 1234-1235 [rejecting argument "that imposing the death penalty on persons for crimes committed while they were 18 to 20 years old violates the state

11

and federal Constitutions because it is cruel and unusual punishment"]; *People v. Powell* (2018) 6 Cal.5th 136, 191 [death penalty did not constitute cruel and unusual punishment in violation of the federal and state Constitutions where defendant was 18 years old at the time of the killing].)

The Courts of Appeal have applied a similar analysis to Eighth Amendment challenges to young adult LWOP sentences. As the court explained in *In re Williams*, 57 Cal.App.5th 427, 439, "If the Eighth Amendment does not prohibit a sentence of death for 21 year olds, then most assuredly, it does not prohibit the lesser LWOP sentence." (Accord, *People v. Acosta*, *supra*, 60 Cal.App.5th at pp. 769, 782 [LWOP sentences did not violate Eighth Amendment where defendant was 21 years old at the time of the murders]; *People v. Montelongo* (2020) 55 Cal.App.5th 1016, 1020, 1030-1032 [rejecting an 18-year-old defendant's contention his LWOP sentence was cruel and unusual punishment under the Eighth Amendment].)

Although these cases relied on the Eighth Amendment's prohibition of cruel and unusual punishment, and not on the prohibition on cruel or unusual punishment in article I, section 17 of the California Constitution, the distinction does not justify a different result. As the California Supreme Court observed in *Hardin*, *supra*, 15 Cal.5th at page 847, footnote 2, with respect to Hardin's equal protection challenge under the California Constitution, there is "'"no reason to suppose" that federal equal protection analysis would yield a result different from what would emerge from analysis of the state Constitution.'" (See *People v. Baker* (2018) 20 Cal.App.5th 711, 733 ["There is considerable overlap in the state and federal approaches [to excessive sentences]. 'Although articulated slightly differently,

12

both standards prohibit punishment that is "grossly disproportionate" to the crime or the individual culpability of the defendant.' [Citation.] 'The touchstone in each is gross disproportionality.'"].)

Applying the analytical framework established by *In re Palmer*, *supra*, 10 Cal.5th at page 973, we conclude DeJesus's LWOP sentence does not constitute cruel or unusual punishment under the California Constitution. DeJesus was convicted of special circumstance murder when he was 25 years old, and we must defer to the Legislature's determination that his special circumstance murder convictions warranted the severe punishment of LWOP. (*Id.* at p. 972 [the Legislature is given "considerable latitude in matching punishments to offenses" because "'[t]he choice of fitting and proper penalties is not an exact science, but a legislative skill involving an appraisal of the evils to be corrected, the weighing of practical alternatives, consideration of relevant policy factors, and responsiveness to the public will'"].) Further, under the standard in *In re Palmer*, at page 972, DeJesus's LWOP sentence for special circumstance murder is not "'grossly disproportionate' to the offense and the offender": DeJesus committed the murder for money and a firearm; DeJesus waited in Duncan's home for Zeitsoff to arrive; after shooting Zeitsoff, DeJesus left him for dead until Zeitsoff tried to get away, at which point DeJesus followed him outside and shot him at least two more times; DeJesus went through the belongings in Zeitsoff's car and kept some of them; and DeJesus drove Zeitsoff's car with Zeitsoff's body in the trunk to another location. Further, Zeitsoff was 25 years old—at least seven years older than a juvenile. An LWOP sentence under these circumstances is not "so excessive that it "'shocks the conscience

13

and offends fundamental notions of human dignity."'" (*Ibid*.; see *In re Butler*, *supra*, 4 Cal.5th at p. 746.)

## DISPOSITION

The order denying the *Franklin* proceeding is affirmed.


FEUER, J.

We concur:


MARTINEZ, P. J.


STONE, J.